LOEB and others, Appellants, v. BOARD OF REGENTS OF THE
UNIVERSITY OF WISCONSIN, Respondent.

*November 3—November 30, 1965.*

For the appellants there was a brief and oral argument by *A. E. Simonson* of Madison.

For the respondent the cause was argued by *Charles A. Bleck,* assistant attorney general, with whom on the brief

were *Bronson C. La Follette,* attorney general, and *Richard E. Barrett,* assistant attorney general.

BEILFUSS, J. The appellant-owners contend that the burden of proof should not have been placed on them and to do so violates due process of law as required by the Fourteenth amendment of the United States constitution, in that sec. 13, art. I of the Wisconsin constitution provides that property shall not be taken for public use without just compensation; that it was error for the trial court to allow the city building inspector to testify that Brenlo was an apartment building; and that it was error for the trial court to allow condemnor to examine Mr. Loeb concerning information contained in his income tax returns.

The owners' argument on the burden of proof is that there is no statutory authority for placing the burden on the condemnees and in any event it is a violation of due process to place the burden on the condemnees when the condemnor initiated the taking.

Sec. 32.06 (10), Stats., by implication, imposes the burden of proof upon the condemnees on any appeal into circuit court:

*"Appeal to Circuit Court.* Within 60 days after the date of filing of the commission's award either condemnor or owner may appeal to the circuit court by giving notice of appeal to the opposite party and to the clerk of the circuit court as provided in s. 32.05 (10). The clerk shall thereupon enter the appeal as an action pending in said court with the condemnee as plaintiff and the condemnor as defendant. It shall thereupon proceed as an action in said court subject to all the provisions of law relating to actions brought therein, but the only issues to be tried shall be questions of title, if any, as provided by ss. 32.11 and 32.12 and the amount of just compensation to be paid by condemnor, and it shall have precedence over all other actions not then on trial. It shall be tried by jury unless waived by both plaintiff and defendant. The amount of the jurisdictional offer or of the commission's award shall not be disclosed to the jury during such trial."

The effect of designating the condemnee as plaintiff with the right to open and close, and proceeding subject to provisions of law relating to actions brought in circuit court is to allocate the burden of proof to the property owner. The owners here were also appellants in the circuit court on the issue of fair market value and they have the burden of proof on that issue. A party seeking judicial process to advance his position carries the burden of proof. *Upper Lakes Shipping v. Seafarers' International Union* (1963), 22 Wis. (2d) 7, 17, 125 N. W. (2d) 324.

The procedure provided for throughout ch. 32, Stats., and especially sec. 32.06, has been followed by the condemnor in this case. At least the owners do not raise any nonconformance with these provisions.

Sec. 32.06 (1), Stats., requires that a determination of the necessity of the taking be made at the outset. Sec. 32.06 (2) requires the condemnor to make at least one appraisal. Then the condemnor must attempt to negotiate with the landowners for a sale. Sec. 32.06 (2a). Sec. 32.06 (3) requires the condemnor to make a jurisdictional offer which the landowners may refuse. If the landowners do not accept the jurisdictional offer, the condemnor may petition the county condemnation commission for a hearing to determine fair market value. Sec. 32.06 (3) and (7). Either party may appeal the determination of the condemnation commission to circuit court. Sec. 32.06 (3) and (10). Either party may appeal from the judgment of the circuit court to the supreme court.

The condemnor must determine the necessity for the taking, make an appraisal of the property, attempt to negotiate a sale, and make a jurisdictional offer before the condemnees must act at all. Then the condemnees may reject the offer, force the condemnor to a hearing before the condemnation commission, appeal to circuit court, and appeal to the supreme court before condemna-

tion procedures are completed. This elaborate procedure is inherently fair, and when that is coupled with the well-recognized presumption that condemnation awards are made in good faith by public officials entrusted with that duty,[1] we cannot say that the due-process clause of the Fourteenth amendment, United States constitution, or sec. 13, art. I, Wisconsin constitution,[2] has been violated. In *State ex rel. Thomson v. Giessel, supra,* we held that due process is satisfied if the condemnees have the right to have their damages determined by the courts.

We do not decide here whether it is constitutionally permissible under the statute to impose the burden of proof upon the owner in those instances where the condemnor appeals from the award of the condemnation commission, for the reason that this question is not at issue and our opinion on that question in this action would be *obiter dictum.*

The owners contend that it was error for the court to allow the building inspector to testify that Brenlo was an apartment building and thus a nonconforming use, because such testimony is an incompetent conclusion. They also contend that Martin should not have been allowed to testify at all because his inspection was made several months after the date of the taking. Since Martin's testimony was related to the date of taking, it was not error to allow him to testify. The owners' own appraiser testified that it is not uncommon for a prospective buyer to have the building inspector inspect the premises for violations of the building code.

If the opinion of the building inspector was in the form of a conclusion of law it would be error to allow it to stand for the reason that the ordinance provides for administrative and court review as to disputed findings and

[1] *State ex rel. Thomson v. Giessel* (1953), 265 Wis. 185, 202, 60 N. W. (2d) 873.

[2] "PRIVATE PROPERTY FOR PUBLIC USE. *Section* 13. The property of no person shall be taken for public use without just compensation therefor."

conclusions of a building inspector, including an opinion that a given building is an apartment building.

Under the state of the record as we find it, it was not error to permit the building inspector to testify as to his opinion that the building in question was an apartment building, and as an apartment building it did not comply with the building code and as such was a nonconforming use. His testimony was evidence to be considered by the jury and weighed by it together with the other credible evidence on the question, and then rejected or accepted and given such weight as the jury determined it was entitled to receive.

The trial court properly and adequately instructed the jury as to the nonconclusiveness of the opinion testimony and as to its permissible probative value:

"Now, members of the jury, there has been testimony in this case with respect to whether or not the building in question was in violation of the building ordinances of the City of Madison and with respect to whether or not the use to which it was being put on March 15, 1963 was a 'legal non-conforming use.' This testimony may be considered by you if you find that it has a bearing upon the fair market value of the property in question on March 15, 1963.

". . .

"The court has not passed and will not here pass upon the debatable question of whether or not the plaintiffs were in violation of the City of Madison building code or whether or not their property was in compliance with the City of Madison building code as a legal non-conforming use. And you are not called upon to decide that particular question. The matter is arguable and if you find that such debatable matter would affect the informed buyer or the informed seller in the market you may consider it, giving it such weight and credit as you find it fairly entitled to receive and as going to the ultimate question of the fair market value on the date of the taking March 15, 1963."

The owners' final contention is that the trial court committed error in allowing condemnor to examine Harry

Loeb regarding information contained in his Wisconsin income-tax returns, and that the attorney general was unauthorized to inspect and obtain copies of these returns.

Sec. 71.11 (44) (c) 2, Stats., allows income-tax returns to be viewed by "[p]ublic officers of this state or its political subdivisions or the authorized agents of such officers when deemed by them necessary in the performance of the duties of their office." Clearly, the attorney general is a public officer of the state. It is his duty to litigate condemnation cases for the state. The income from the property in question was, in this instance, a significant factor in determining the fair market value. All the expert appraisers used an income approach as one of the measures of fair market value.

The owners contend that actual income figures are irrelevant because there was testimony that the property was not being used for its highest and best use. Sec. 32.09 (2), Stats., requires compensation to be based upon the highest and best use of the land. However, Mr. Loeb testified that he gave the appraisers an income figure for use in their appraisal. The appraisers considered this figure in their income approach, and it was reflected in the fair market value arrived at by them. Thus, it was relevant and material for the condemnor to examine Mr. Loeb concerning his income. It then became necessary for the condemnor to obtain copies of Loeb's income-tax returns. These were not introduced in evidence, but were resorted to twice when Loeb's independent recollection of the figures failed. The returns were used to refresh his recollection, and they were proper for impeachment purposes.

The owners further object to the use of the income-tax returns for the reason that the returns reflected income from two additional properties, and, although the total net income as reported was accurate, the allocation of expense to the various properties was arbitrarily assigned and not accurate, and therefore misleading. This ex-

planation could be properly reached in redirect examination.

Because the attorney general was authorized by statute to examine and obtain copies of Loeb's pertinent income-tax returns, and because the owners opened the door to the inquiry into Mr. Loeb's income from the Brenlo property, the trial court properly allowed the line of questioning and the use of the income-tax returns to refresh Loeb's recollection.

*By the Court.*—Judgment affirmed.

WILKIE, J., took no part.