STATE OF NORTH CAROLINA v. HARRY DOUGLAS DURHAM

No. 845SC767

(Filed 16 April 1985)

1. **Rape and Allied Offenses § 10— direct cross-examination of five-year-old victim not allowed—cross-examination of mother permitted—no error**

     In a prosecution for taking indecent liberties with a five-year-old child where the court did not allow direct cross-examination of the child about her "night terrors" and treatment at a mental health clinic, there was no error under the rule of *State v. Edwards*, 305 N.C. 378, because the court permitted cross-examination of the child's mother on the same subject. However, it was noted that in a case such as this the rule may be criticized because it obscures and may work against a defendant's Sixth Amendment rights.

2. **Rape and Allied Offenses § 10; Constitutional Law § 70— evidence that five-year-old victim's nightmares sexual in origin excluded—defendant deprived of effective cross-examination**

     In a prosecution for taking indecent liberties with a five-year-old child, the court erred by excluding evidence that the child had a history of nightmares in which she would sit up in bed screaming and crying with her eyes open, saying "don't touch me, leave me alone"; that she accused defendant at night after

swinging around, waking with a start and crying; that a few hours after accusing defendant the child told her mother and defendant's girl friend, who was living in the same house, that her father had abused her in the same way; and that the child's mother had told the girl friend about the night terrors and the treatment at the mental health center. By completely foreclosing cross-examination of the child or her mother on the child's accusation of her father and on the content of the child's nightmares, the trial judge deprived defendant of his right to effective cross-examination.

APPEAL by defendant from *Reid, Judge.* Judgment entered 14 December 1983 in Superior Court, NEW HANOVER County. Heard in the Court of Appeals 7 March 1985.

The defendant was charged with taking indecent liberties with a five-year-old child. The State produced as witnesses the child; her mother; a social worker, Anna Stringfield; and a Wilmington police officer, J. F. Newber. The State's evidence tended to show that on 3 August 1983 the defendant baby-sat for the child and another child named Jennifer at the mother's home. The child testified that the defendant read her a book, then pulled her pajama pants down, and licked her "in the crack." The child demonstrated at trial what defendant did to her, using dolls supplied by social worker Anna Stringfield.

The child first told her mother what defendant had done to her three days after the alleged crime. On 7 August 1983, at approximately four in the morning, the child's mother returned home and got into the bed where the child was sleeping. The child swung around in her sleep, hitting her mother, and awoke with a start. She then began to cry and tell her mother what defendant had done.

The child's mother then woke Becky Baker and defendant, who were sleeping in another room, and had the child repeat the accusations. Defendant left the house, and the mother and Becky Baker discussed the incident. Becky Baker testified, during a voir dire, that after defendant left the child told her and the mother that her (the child's) father had done the same thing to her as defendant had. The mother then told Becky Baker that the child had experienced "night terrors" for which she had been treated at a mental health clinic. Ms. Baker testified that the mother played a tape of the child experiencing one of her "night terrors." Ms. Baker stated that the mother indicated she had been told by

State v. Durham

a mental health counselor that the night terrors were sexual in origin.

Defendant did not testify at trial. His position is that the alleged crime did not take place. He asserts that the child fantasized the incident. At an in-chambers conference before trial and a voir dire during trial, the defense proposed to offer evidence that the child's "night terrors" involved fears of being touched and may have been due to a previous incident of alleged sexual abuse by the child's father. The defense sought to introduce the evidence through cross-examination of the child and her mother, and through testimony of Becky Baker, the defendant's girl friend, who was living at the child's mother's home at the time of the alleged crime. The defense apparently also sought to introduce a tape of the child during one of her "night terrors."

The trial court ruled that the jury could hear evidence that the child had been treated for "night terrors" to the extent it bore on the question of the child's credibility. The trial court found, however, that evidence suggesting that the "night terrors" resulted from prior sexual abuse or the presence of a male was speculative and prejudicial, and should be excluded. The only testimony allowed at trial on the subject of "night terrors" was that the child had had "night terrors" and had been treated five times at a mental health center. This was given by the child's mother and by Becky Baker.

The defendant was convicted of taking indecent liberties and was sentenced to an eight year prison term. Defendant appeals.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General David Gordon, for the State.*

*Appellate Defender Adam Stein, by Assistant Appellate Defender Robin E. Hudson, for defendant appellant.*

ARNOLD, Judge.

The defendant is charged with taking indecent liberties with a five-year-old child. The defendant argues that the child imagined or fantasized that defendant touched her in an indecent manner.

In this appeal defendant contends first that the trial judge erred by not allowing him to cross-examine the child as to the

fact that she had experienced "night terrors" and had been treated for them five times at a mental health clinic. The trial judge allowed the defense counsel to question the child's mother as to these matters for the purposes of attacking the child's credibility. The defendant argues that the trial judge denied his right to confront his accusers by refusing to let him question the child personally on a matter admittedly relevant to her credibility.

Further, defendant objects to the trial judge's refusal to allow him to cross-examine the child and her mother as to the content of the night terrors, and to submit testimony of Becky Baker, who lived in the mother's household, concerning the night terrors and the child's statement that her father also had similar sexual contact with her. The trial judge ruled that the contents of the child's night terrors and the child's accusation of her father were not relevant to defendant's guilt or innocence. The defendant argues that the trial judge by so restricting cross-examination and the presentation of evidence denied defendant his right to confront the witnesses against him and to present his defense.

I.

[1]   We consider first defendant's contention that he should have been allowed to put questions to the child personally, which he was allowed to put to her mother, and which concerned a matter relevant to the child's credibility as a witness.

The right to confront one's accusers, guaranteed by the sixth amendment and made applicable to the states by the fourteenth, is central to an effective defense and a fair trial. *Pointer v. Texas,* 380 U.S. 400, 403-05, 85 S.Ct. 1065, 1067-68, 13 L.Ed. 2d 923, 926-27 (1965). At the heart of the right of confrontation is cross-examination. *Id.* As Professor Wigmore has stated:

> The opponent demands confrontation, not for the idle purpose of gazing upon the witness, or of being gazed upon by him, but for the purpose of cross-examination, which cannot be had except by the *direct and personal* putting of questions and obtaining immediate answers.

5 J. Wigmore, Evidence § 1395, p. 123 (3d ed. 1940), *cited with approval* in *Davis v. Alaska,* 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed. 2d 347, 353 (1974) (emphasis added).

The right of effective cross-examination, recognized as fundamental by the Supreme Court, *Pointer*, 380 U.S. at 403-05, 85 S.Ct. at 1068, 13 L.Ed. 2d at 926-27; *Davis*, 415 U.S. at 318, 94 S.Ct. at 1111, 39 L.Ed. 2d at 355, is denied when a defendant is prevented from cross-examining a witness at all on a subject matter relevant to the witness's credibility. *Snyder v. Coiner*, 510 F. 2d 224, 225 (4th Cir. 1975), *cited* in *State v. Legette*, 292 N.C. 44, 53, 231 S.E. 2d 896, 901 (1977). Moreover, the denial of that right is a "constitutional error of the first magnitude and no amount of showing of want of prejudice would cure it." *Davis*, 415 U.S. at 318, 94 S.Ct. at 1111, 39 L.Ed. 2d at 355, *citing Smith v. Illinois*, 390 U.S. 129, 131, 88 S.Ct. 748, 750, 19 L.Ed. 2d 956, 959 (1968) and *Brookhart v. Janis*, 384 U.S. 1, 3, 86 S.Ct. 1245, 1246, 16 L.Ed. 2d 314, 316 (1966).

It has been recognized that the right of cross-examination is not absolute and may, in appropriate cases, be outweighed by other legitimate interests in the criminal process. *See Mancusi v. Stubbs*, 408 U.S. 204, 92 S.Ct. 2308, 33 L.Ed. 2d 293 (1972) (admission of previously-recorded testimony of unavailable witness not a violation of the confrontation clause if testimony bears sufficient "indicia of reliability"). *But see Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed. 2d 297 (1973) (state common law "voucher rule," preventing impeachment of one's own witness, does not outweigh right to cross-examine); *Davis v. Alaska*, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed. 2d 347 (1974) (state policy of preventing public disclosure of juvenile offender's record does not outweigh right to cross-examine). Yet, the denial or significant diminution of the right to effective cross-examination "calls into question the ultimate 'integrity of the fact-finding process,' and requires that the competing interest be closely examined," *Chambers*, 410 U.S. at 295, 93 S.Ct. at 1046, 35 L.Ed. 2d at 309, *quoting Berger v. California*, 393 U.S. 314, 315, 89 S.Ct. 540, 21 L.Ed. 2d 508 (1969).

Once a defendant has been given the full and fair opportunity guaranteed by the sixth and fourteenth amendments to cross-examine on matters raised in the direct examination and on matters relevant to credibility, the trial judge may in his discretion prevent cross-examination which is repetitious or harassing. When the trial judge commits error in controlling the scope of cross-examination which is within his discretion, the error is harmless if no proof is presented that prejudice resulted, *i.e.*, that

"the verdict was improperly influenced thereby." *State v. Britt*, 291 N.C. 528, 545, 231 S.E. 2d 644, 655 (1977).

The problem we face in the present case is whether by foreclosing personal cross-examination of the child on a matter relevant to her credibility the trial judge denied defendant's constitutional right of confrontation, or whether he acted within his discretion to control the scope of cross-examination.

The trial court refused to allow defendant to cross-examine the child as to her treatment for night terrors, while allowing defendant to cross-examine the child's mother as to that subject for purposes of attacking the child's credibility. From the fact that the child had had severe nightmares, or night terrors, and that her mother had taken her to a mental health center five times for treatment it is reasonable to infer that the child might have had some form of mental or emotional illness that might have affected her testimonial capacities. The trial judge correctly concluded that this was a subject relevant to the child's credibility as a witness.

If this was a subject matter relevant to the child's credibility as a witness, then defendant should have been permitted to cross-examine her. Yet, the trial judge only allowed defendant to put these facts into evidence through cross-examination of the child's mother. The rule in North Carolina is that where a trial court erroneously refuses to allow cross-examination of a witness, and then the evidence sought to be admitted by cross-examination is admitted later by another witness, the error is harmless. *See State v. Edwards*, 305 N.C. 378, 381-82, 289 S.E. 2d 360, 363 (1982); *see also State v. Smith*, 294 N.C. 365, 377, 241 S.E. 2d 674, 681 (1978).

While we will abide by that rule in this case, we believe it should be criticized as not in keeping with the underlying purposes of the sixth amendment right to confront one's accusers. The North Carolina rule in practice allows the trial judge to appoint an alternate to answer difficult credibility questions, and denies the defendant the right to question the witness personally in front of the jury, so that the jury can observe the witness's response and judge the witness's credibility. Where the witness is the principal accuser, and the only person except for the defendant who has first-hand knowledge of the crime and related events, the appointment of an alternate might deprive the jury of crucial

facts which only the witness himself knows and might reveal on cross-examination.

Further, we take issue with what appears to be the underlying motivation in child witness cases for permitting a relative to testify for the child. It has been argued, as the State did in the present case, that the trial court may appoint a relative to testify "to lessen the emotional trauma of the trial on the young victim." We agree that the State has an interest in protecting the child from further brutalization by the trial process.

Yet, answering the questions put by the defense counsel in cross-examination often is no more traumatic than describing the crime itself, which the child as principal witness must do. Our Constitution requires that a person who has been accused by another has a right to confront his accuser in the flesh, and not through an alternate or substitute. Moreover, this right extends to all subjects relevant to the accuser's credibility, whatever their emotional content. A child witness then, who is also a victim and principal accuser, cannot be insulated entirely from a relevant area of questioning which puts at issue the child's credibility. This is not to say, however, that the trial judge may not in his discretion oversee the cross-examination, as with all witnesses, to prevent the defense counsel from so phrasing his questions as to harass the witness.

On the issue of whether the trial judge's refusal to allow cross-examination of the child on a clearly relevant subject was error, in light of the cross-examination of the mother on the same subject, the rule of *State v. Edwards* controls, and we will adhere to it. The rule, however, in a case like the present, may be criticized because it obscures and may work against a defendant's sixth amendment rights.

## II.

[2] We turn now to the second part of defendant's argument: that the trial court erred in refusing to admit any evidence of the nature and causes of the child's nightmares and of her statement that her father had abused her in the same way defendant had. The trial judge heard evidence in voir dire that the child's mother had been told that the child's night terrors had some basis in sexual abuse committed, presumably, by her father. This was given by Becky Baker, defendant's girl friend, who lived in the mother's house. Ms. Baker testified in the second voir dire that the morn-

ing after the child accused defendant, and the child's mother confronted him, the child then said in the presence of her mother and Ms. Baker that her father had done the same thing. Ms. Baker testified further that this caused the mother to tell Ms. Baker about the child's night terrors and to play a tape of the child while she was experiencing one of these nightmares. The trial judge questioned Ms. Baker about the mother's purpose in playing the tape, and Ms. Baker said she believed the mother had been told and believed the night terrors had a sexual origin.

We note initially that on appeal defendant contends he sought to introduce at trial the testimony of the mental health counselor, Goldie Walton, and the tape of the child experiencing one of her night terrors. Yet, the defendant did not preserve voir dire testimony of Ms. Walton in the record, nor did he preserve the tape or a copy of it. We thus have no means to review whether Ms. Walton's testimony and the tape should have been admitted, and our inquiry will therefore be limited to the excluded testimony of Becky Baker and the restrictions placed on defendant's cross-examination of the child and her mother.

The trial judge ruled in the voir dire that Ms. Baker's testimony was not admissible to present the child's accusation of her father, or to present the defense theory that the child's night terrors were somehow linked to the child's accusation of defendant. Further, the trial judge ruled at the earlier in-chambers conference that defendant could not cross-examine the child or her mother as to the substance of her night terrors and as to her accusation of her father. The trial judge reasoned that evidence of the contents of the night terrors and of the child's accusation of her father was not relevant, and was too speculative and prejudicial to be admitted before the jury.

The defendant says that by refusing to allow him to present Ms. Baker's testimony the trial judge denied his right to present his defense. Defendant thus invokes his fundamental right to present witnesses in his defense guaranteed by the compulsory process clause of the sixth amendment and made applicable to the states via the due process clause of the fourteenth amendment. *Washington v. Texas*, 388 U.S. 14, 87 S.Ct. 1920, 18 L.Ed. 2d 1019 (1967). Defendant also says that by refusing to allow him to cross-examine the child and her mother as to the contents of the child's night terrors, the trial judge denied his right to cross-examine witnesses against him and so to put in issue their credibility. *See*

cases cited *supra.* Whether defendant's constitutional rights were violated reduces essentially to whether the evidence sought to be presented and the questions sought to be put were *relevant* to either defendant's claim that he did not touch the child in an indecent manner, or to the credibility of the witnesses against him.

We deal first with Becky Baker's testimony that the child accused her father of the same acts defendant allegedly committed, only a few hours after she accused defendant. The defendant argues that *State v. Baron,* 58 N.C. App. 150, 292 S.E. 2d 741 (1982), is pertinent. In that case this Court granted a new trial where the trial judge had excluded evidence that a thirteen-year-old prosecuting witness had previously and, it appears, falsely, accused others of improper sexual advances. The precise question before the Court was whether the trial judge erred in applying the North Carolina Rape Shield Statute, G.S. 8-58.6, to exclude these accusations. The Court held that the trial judge did err, citing *State v. Smith,* 45 N.C. App. 501, 263 S.E. 2d 371, *disc. rev. denied,* 301 N.C. 104, 273 S.E. 2d 460 (1980), on the grounds that the statute excluded evidence of "sexual behavior," but not evidence of language or conversation whose topic might be sexual behavior. Assuming that the evidence of the accusations was otherwise admissible, the Court found that defense counsel should have been allowed to introduce it in order to attack the credibility of the prosecuting witness. *Baron,* 58 N.C. App. at 153-54, 292 S.E. 2d at 743.

While we agree that in the present case the child's accusation of her father, to the extent it is evidence of conversation or language, is not excluded by the Rape Shield Statute, we still face the problem of whether this accusation is relevant to the child's credibility. In *Baron,* the child witness made a number of accusations, in circumstances from which it could be reasonably inferred that they were false. Certainly, this evidence was relevant to the child's credibility.

In the present case, however, the circumstances are different, and somewhat less compelling, but they are troubling nonetheless. The child informed her mother at 4:00 a.m. on 7 August 1983, after awaking with a start, and crying, that defendant had abused her. The child had a history of nightmares, in which she would sit up in bed, screaming and crying, with her eyes open, saying, "Don't touch me. Leave me alone." A few hours after she accused defendant, the child also told her mother and

Becky Baker that her father had abused her in the same way. This caused her mother to relate to Becky Baker the history of the child's night terrors, and treatment at a mental health center, and to play a cassette tape of the child experiencing a night terror, all which suggested to Ms. Baker that the child had mental problems, and that the child's night terrors were sexual in nature.

In these circumstances, we believe the child's accusation of the father was relevant to the child's credibility, and we believe the trial judge abused his discretion and violated defendant's constitutional rights by ruling such a subject irrelevant and by *completely foreclosing* any discussion of it by Becky Baker before the jury.

We find also that Becky Baker's testimony as to what the mother told her about the nature of the child's nightmares was relevant. This testimony tended to support defendant's contention that the child had a history of experiencing serious nightmares which may have had a sexual origin and nature, and that she accused defendant at night in a manner similar to that in which she behaved when she had her night terrors. We agree that defendant's evidence does not conclusively prove that the child fantasized the alleged crime. Yet, we believe that whether there was a connection between the night terrors and the child's accusation of defendant sufficient to absolve the defendant was a question of fact for the jury. The jury should have been allowed at least to consider this defense theory.

Finally, we believe that by completely foreclosing any cross-examination of the child or her mother on the child's accusation of her father and on the content of the child's nightmares the trial judge deprived the defendant of his right to effective cross-examination. The trial judge did not allow cross-examination of any witness on this subject, and so the rule of *State v. Edwards* does not apply. These subjects, as noted above, were relevant to the child's testimonial capacities. Moreover, we do not believe that the jury would have been confused or inflamed by carefully monitored cross-examination of the child or her mother on these topics.

Obviously, in a case such as this, the trial judge should screen in advance and oversee questioning of the child, her mother, and witnesses such as Ms. Baker. Moreover, the trial judge should carefully instruct the jury as to the purposes to which such evidence may be considered. In this way he may bet-

ter protect the child and other witnesses from harassment, safeguard against improper innuendo, and, when pertinent, insure compliance with the Rape Shield Statute.

We remand for retrial consistent with this opinion.

Judges EAGLES and PARKER concur.