STATE of Wisconsin, Plaintiff-Appellant,
v.

Anthony L. VONESH, Defendant-Respondent.†

Court of Appeals

*No. 86–0540-CR. Submitted on briefs September 4, 1986.—Decided
December 18, 1986.*

(Also reported in 400 N.W.2d 508.)

† Petition to review denied.

For the plaintiff-appellant the cause was submitted on the briefs of *Bronson C. La Follette*, attorney general, and *David J. Becker*, assistant attorney general.

For the defendant-respondent the cause was submitted on the brief of *Tod O. Daniel* and *Nancy V. Welch* of Janesville.

Before Gartzke, P.J., Dykman, and Sundby, JJ.

SUNBY, J. Anthony L. Vonesh is charged with first-degree sexual assault on his eleven-year-old daughter contrary to sec. 940.225(1)(d), Stats. The trial court denied the state's motion based on Wisconsin's rape shield law, sec. 972.11(2), Stats., to exclude from evidence two notes written by the complainant. We granted the state's petition for leave to appeal. Because the notes do not describe prior sexual conduct, and do not constitute prior sexual conduct, we conclude they are admissible. We affirm.

Wisconsin's rape shield law provides: "If the defendant is accused of a crime under s. 940.255, any evidence concerning the complaining witness's prior sexual conduct . . . shall not be admitted into evidence during the course of the hearing or trial . . . . " Section 972.11(2)(b), Stats.

478

The first note reads: "Dear Spiencer [sic], I love you. You would not fock [sic] me. The only reason I said I was twelve is because I want you and I want you to go with me. And I wanted you to fuck me." The second note is a "Kissing License" which reads:

The boy that reads this must follow these rules that very same day he reads it.

*Rules*

1. Walk up to the owner of this license
2. Put your arms around her
3. Then say I must kiss you now
4. Then go for it and it must be french
5. After you kiss say "I need it"
6. If you like do not quit.

Vonesh seeks to introduce the notes to show motive of his daughter to fabricate her charges and to show prior sexual knowledge from sources other than the alleged assault. He claims she retaliated by falsely accusing him when he told her he was going to send the notes to her mother. The trial court concluded that the notes were admissible because they were not evidence of "prior sexual conduct."[1]

The admissibility of the notes presents two questions: (1) Do the notes describe prior sexual conduct? and (2) Were the acts of writing and copying the notes prior sexual conduct? To answer these questions we

---

[1] Our disposition of the appeal makes it unnecessary for us to consider Vonesh's claim that to deny admission of the notes would deprive him of his sixth and fourteenth amendment rights.

apply the rape shield law to the facts presented by the record. "The construction of a statute in relation to a given set of facts is a question of law. *State v. Clausen*, 105 Wis.2d 231, 243, 313 N.W.2d 819 (1982). Therefore, we need not give special deference to the determinations of the circuit court." *Tahtinen v. MSI Ins. Co.*, 122 Wis. 2d 158, 166, 361 N.W.2d 673, 677 (1985). Before construing sec. 972.11(2), Stats., we must determine whether the statute is ambiguous.

> A statute is ambiguous if it is capable of being construed in two different ways by reasonably well-informed persons. *Kollasch v. Adamany*, 104 Wis.2d 552, 561, 313 N.W.2d 47 (1981). However, we have recognized that parties have obviously disagreed as to a statute's meaning whenever a case involving statutory construction reaches this court. *State v. Wittrock*, 119 Wis.2d 664, 670, 350 N.W.2d 647 (1984); *Aero Auto Parts, Inc. v. Dept. of Transp.*, 78 Wis.2d 235, 238–39, 253 N.W.2d 896 (1977). Therefore, the court must examine the language of the statute itself to determine whether well-informed persons should have become confused. *Wittrock* at 670; *Aero Auto Parts, Inc.* at 238–39. When the language of the statute is clear and unambiguous, the statute must be interpreted on the basis of the plain meaning of its terms. *Wittrock* at 670, *State v. Derenne*, 102 Wis.2d 38, 45, 306 N.W.2d 12 (1981).

*Tahtinen*, 122 Wis. 2d at 166–67, 361 N.W.2d at 678.

"Sexual conduct" is defined as "any conduct or behavior relating to sexual activities of the complaining witness, including but not limited to prior experience of sexual intercourse or sexual contact, use of contraceptives, living arrangement and lifestyle." Sec.

480

972.11(2)(a), Stats. Usually, where a word or phrase is defined in a statute, its meaning is as defined, and no construction is necessary. *Britton v. Transportation Department*, 123 Wis. 2d 226, 229, 365 N.W.2d 919, 921 (Ct. App. 1985). Here "sexual conduct" is defined by other words—"conduct" and "behavior"—which on their face are not ambiguous. However, words in common usage may have varying meanings according to the context in which used. *Lukaszewicz v. Concrete Research, Inc.*, 43 Wis. 2d 335, 342, 168 N.W.2d 581, 585 (1969). That is true here. Reasonably well-informed persons may differ as to whether a written or verbal communication or expression having a sexual basis or connotation may be, or describes, conduct or behavior relating to sexual activities.

## THE KISSING LICENSE

The conduct or behavior contemplated in the "license" is future conduct or behavior and is not shielded by the law. However, the law is ambiguous in that reasonably well-informed persons may differ as to whether the act of copying or writing the "license" is prior sexual conduct.

## THE "DEAR SPENCER" NOTE[2]

The "Dear Spencer" note contains expressions of sexual desires: "I want you," and "[I] wanted you to fuck

---

[2] In response to Vonesh's constitutional argument that the "Dear Spencer" note is relevant to show the complainant's knowledge of sexual conduct the state responds: "[The 'Dear Spencer'"] note does show that the victim knew the word 'fuck,' but it does not describe the activity that word denotes. It thus leaves

me." The note also contains the sentence—"You would not fock [sic] me"—which, arguably, describes a prior sexual experience or, more precisely, a sexual nonexperience. The rape shield law is ambiguous as to whether the written expression of a desire to have sexual relations with another is sexual conduct and whether writing about sexual desires is sexual conduct. The law is also ambiguous as to whether describing in writing the rejection of a sexual overture is sexual conduct. Reasonably well-informed persons could reach different conclusions as to whether the "Dear Spencer" note describes, or is, sexual conduct.

## CONSTRUCTION OF RAPE SHIELD LAW

The guiding principle of statutory construction is to determine the intent of the legislature. *Hemerley v. American Fam. Mut. Ins. Co.*, 127 Wis. 2d 304, 308, 379 N.W.2d 860, 863 (Ct. App. 1985). When an ambiguity in statutory language is present, we must determine the

---

unanswered the question whether the victim knew what that word meant or only knew the word." We would accept this statement as a concession by the state that, without further proof of complainant's knowledge, the "Dear Spencer" note does not constitute evidence of prior sexual conduct were it not for the state's strenuous argument elsewhere in its briefs that the note refers to the complainant's "affirmative sexual activity." Apparently it is the position of the state that because the complainant used a word—"fuck"—which describes a sexual activity, the note constitutes evidence of sexual conduct *even if* the complainant did not know the meaning of the word. We reject this proposition. Since in the proceedings below the parties assumed the complainant knew what the word "fuck" meant, and the court in its ruling assumed that knowledge, we decide the appeal on that basis.

legislative intent from the language of the statute in relation to its scope, history, context, subject matter and the object sought to be accomplished. *Stoll v. Adriansen*, 122 Wis. 2d 503, 511, 362 N.W.2d 182, 187 (Ct. App. 1984). When a statute is ambiguous, a reviewing court may resort to extrinsic aids to determine legislative intent. *State v. Stepniewski*, 105 Wis. 2d 261, 268, 314 N.W.2d 98, 101 (1982).

(a) *Legislative History*

"One of the most valuable extrinsic aids of judicial construction is legislative history." *Milwaukee Co. v. Labor & Ind. Rev. Comm.*, 113 Wis. 2d 199, 204, 335 N.W.2d 412, 415 (Ct. App. 1983). Section 972.11(2), Stats., was created as part of Wisconsin's sexual assault law, sec. 12, ch. 184, Laws of 1975, effective March 27, 1976. The history of the law reveals that it was enacted for the same reasons which led to the wave of reform nationwide.[3] The purpose of such reform is summarized in *Rape Law Revision: A Brief Summary of State Action*, Legislative Reference Bureau, Informational bulletin 75-IB-1, April 1975, p. 6,[4] as follows:

---

[3] The first state or federal rape shield statute was passed in Michigan in 1974. Galvin, *Shielding Rape Victims in the State and Federal Courts: A Proposal for the Second Decade*, 70 Minn. L. Rev. 763, 765 n. 3 (1986). Professor Galvin found that forty-eight states, the federal government, and the military have rape shield laws in some form.

[4] The Legislative Reference Bureau may be resorted to as a resource to determine legislative history. *White Hen Pantry v. Buttke*, 100 Wis. 2d 169, 177 n. 8, 301 N.W.2d 216, 221 (1981). The Legislative Reference Bureau is a part of the legislature and its duties include maintaining the drafting records of the legislature to provide information on questions of legislative intent, sec. 13.92(1)(a)3, Stats., and to prepare studies and reports providing

For the most part, this legislation is directed at making rape convictions easier to obtain by eliminating or modifying statutory requirements for corroborative testimony and testimony regarding the victim's prior sexual conduct. Proponents of rape law reform hope that the new laws will lead to an increase in the number of rape prosecutions by removing some of the potential for embarrassment or humiliation which inhibits victims from reporting crimes.

The objective of the reformers was to reverse the long-standing common law doctrine that permitted a defendant accused of rape to inquire into the complainant's "character for unchastity." Galvin, *Shielding Rape Victims in the State and Federal Courts: A Proposal for the Second Decade*, 70 Minn. L. Rev. 763, 765 (1986).

Section 972.11(2)(b), Stats., makes inadmissible in a sexual assault prosecution the complaining witness's prior sexual conduct except: (1) evidence of past sexual conduct with the defendant; (2) evidence of specific instances of sexual conduct showing the source or origin of semen, pregnancy or disease, to determine the degree of assault or extent of injury; (3) evidence of complainant's prior untruthful allegations of sexual assault. In *State v. Gavigan*, 111 Wis. 2d 150, 330 N.W.2d 571 (1983), the court permitted evidence of prior sexual conduct not within these exceptions to be admitted in a sexual assault prosecution.[5]

pertinent information regarding subjects of concern to the legislature, sec. 13.92(1)(a)4.

[5] The majority held that complainant's statements to the defendant during and immediately prior to the assault that she was a virgin were subject to the rape shield law. *Gavigan*, 111 Wis. 2d at 159, 330 N.W.2d at 576. The dissent called these statements merely evidence of what took place, so not within the rape shield law. The dissent would have allowed the jury, under cautionary instructions,

The Wisconsin legislature reacted to *Gavigan* promptly and pointedly by enacting 1983 Wis. Act 449[6] creating sec. 972.11(2)(c), Stats., to read:

> Notwithstanding s. 901.06, the limitation on the admission of evidence of or reference to the prior sexual conduct of the complaining witness in par. (b) applies regardless of the purpose of the admission or reference unless the admission is expressly permitted under par. (b)1, 2 or 3.

The Legislative Reference Bureau's analysis of the Act[7] contains the following:

> In *State v. Gavigan*, 111 Wis.2d 150 (1983), the Wisconsin supreme court authorized the admission of evidence of the victim's prior conduct if the evidence serves to prove a fact independent of the prior sexual conduct, if the probative value of the evidence

---

to weigh complainant's statements on the issue of consent, solely to show she had attempted to deter the attack by advancing a reason—whether true or not—which she believed might have that effect. *Id.* at 171, 330 N.W.2d at 582 (Heffernan, J., dissenting).

[6] As to this legislative reaction, Prof. Galvin states:

> This recent amendment represents the single instance in which a legislature has overridden a broad interpretation of a Michigan-type statute. . . . It will be interesting to see how the Wisconsin courts will deal with cases in which the accused seeks to elicit sexual conduct evidence supportive of a claim of bias, for example, because such proof is not specifically excepted under the statute. . . . Such cases will undoubtedly leave the Wisconsin courts with no recourse but to hold the statute unconstitutional.

Galvin, *supra* at 875 n. 532.

[7] The drafting section of the Legislative Reference Bureau is required to prepare a plain language analysis of each original measure, to be printed with the measure when it is introduced. Section 13.92(1)(b)2, Stats. The analysis was printed with the bill when it was introduced.

outweighs its prejudicial effect and if the jury's consideration of the evidence is for limited purposes.

This bill provides that the 3 statutorily recognized exceptions are the only exceptions to the general rule prohibiting admissibility of prior sexual conduct of an alleged sexual assault victim. A court may not allow other exceptions regardless of the purpose for the consideration.

The bill which became 1983 Wis. Act 449 was drafted by the Wisconsin Legislative Council Staff. A memorandum accompanying the bill reflects the author's intent to change the effect of *Gavigan*. Wisconsin Legislative Coucil Staff Memorandum (July 20, 1983).[8] The memorandum suggested that to deal with *Gavigan* the legislature should amend the statute "in such a way that courts are aware that the Legislature clearly means to limit the variances in the statute to the enumerated exceptions and to prevent the introduction of evidence of prior sexual conduct for other purposes." *Id.* at 4.

(b) *Legislative Intent*
The alacrity with which the legislature acted makes quite clear that the legislature disagreed with the *Gavigan* majority that evidence of prior sexual conduct is admissible to prove a fact independent of the conduct. *See In re Estate of Haese*, 80 Wis. 2d 285, 294, 259 N.W.2d 54, 58 (1977) (a court interpretation of a statute

---

[8] The Wisconsin Legislative Council is part of the legislature. Section 13.81, Stats. The executive secretary of the Council heads the bureau known as the "Legislative Council Staff." Section 13.91. The bureau receives and acts on requests from members of the legislature to research matters of concern to the legislature and to draft legislation. *Id.* 1983 Wis. Act 449 resulted from a Legislative Council Staff bill draft which accompanied the staff memorandum.

becomes part of that statute; it is the duty of the legislature to act if it disagrees).

While the militancy of the Wisconsin legislature is obvious, that militancy has been confined to shielding evidence tending to show the extent or nature of the complainant's actual sexual experiences. We have not been admonished by the legislature to construe "sexual conduct" so broadly as to include all activity or conditions having a sexual connotation, *e.g.* reading, writing and talking about sex and sexual desires, or observing or describing the sexual activity of others. More importantly, we must assume, to the extent the legislative history permits, that the legislature used the term "sexual conduct" in a constitutional way, *see State ex rel. Chobot v. Circuit Court*, 61 Wis. 2d 354, 367, 212 N.W.2d 690, 696 (1973) (words in statutes dependent upon the constitution must be elastic).

(c) *Giving Effect to the Rape Shield Law*

Having ascertained the legislative intent we must give effect to it. *Boynton Cab Co. v. Neubeck*, 237 Wis. 249, 257, 296 N.W. 636, 639 (1941). However, given a choice of possible interpretations of a statute, we must select the construction that results in constitutionality rather than invalidity. *State ex rel. Lynch v. Conta*, 71 Wis. 2d 662, 689, 239 N.W.2d 313, 332 (1976). It is the cardinal principle of statutory construction to save and not destroy. *State v. Dairyland Power Cooperative*, 52 Wis. 2d 45, 51, 187 N.W.2d 878, 881 (1971).

Nonetheless, in view of the legislative history of Wisconsin's rape shield law, we cannot construe the statute to allow the admission of evidence having relevance and probative value, even significant value, if that evidence includes prior sexual conduct of the complainant. We may approve admission of the notes only if we

are satisfied that they do not contain evidence of, nor do they constitute, sexual conduct, unless we are prepared to hold that the rape shield law is unconstitutional in its application to the facts of this case. We are faced with the delicate task of construing the rape shield law to save its constitutionality, if we can, without doing violence to the legislature's intent.[9] We first examine the statute for assistance in construing the phrase "sexual conduct."

(d) *Construction of Meaning of "Sexual Conduct" From Statutory Language*

"[T]he meaning of a word takes color and expression from the purport of the entire phrase of which it is a part . . . ." *Lewis Realty v. Wisconsin R. E. Brokers' Board*, 6 Wis. 2d 99, 108, 94 N.W.2d 238, 243 (1959). Thus, the meaning of "sexual conduct" gains more precision when considered with the examples of sexual conduct contained in the definition, i.e., sexual intercourse or sexual contact, use of contraceptives, living arrangement and life-style. These associated examples all relate directly to physical experiences and activities sexual in nature or which permit inferences to be drawn as to the nature and extent of a person's physical sexual experiences or activities.

With the exception of *Gavigan*, neither the Wisconsin Supreme Court nor this court has resolved a dispute as to whether the conduct or behavior involved in a case was sexual conduct under sec. 972.11(2), Stats. Since

---

[9] It has been stated that the Constitution creates in every statute and rule excluding evidence an unwritten due process exception permitting the admission of excluded evidence that is constitutionally required to be admitted. Comment, *Rape Shield Statutes: Constitutional Despite Unconstitutional Exclusions of Evidence*, 1985 Wis. L. Rev. 1219, 1270.

our rape shield law is patterned after Michigan's,[10] decisions of the Michigan court are entitled to weight. *Hainz v. Shopko Stores, Inc.*, 121 Wis. 2d 168, 173, 359 N.W.2d 397, 400 (Ct. App. 1984) (judicial interpretation of similar statutes in other states may be used as extrinsic aid to construction). Two decisions have considered whether the conduct involved was sexual conduct under Michigan's statute. In *People v. Arenda*, 330 N.W.2d 814, 818 (Mich. 1982), the Michigan court stated that the following activities were not subject to the statute: reading a book, seeing a movie, conversing with others, schoolwork or witnessing others engaged in sexual activity. In *People v. Hackett*, 365 N.W.2d 120, 128 (Mich. 1984), the complainant's statement of her sexual dissatisfaction at home was held to not fall within the rape shield law.

Other jurisdictions have construed "conduct" or "behavior" under rape shield laws making evidence of sexual conduct inadmissible. *State v. Smith*, 263 S.E.2d 371, 372 (N.C. Ct. App. 1980) (discussions concerning the sexual problems of the complainant and the defendant's brother were not sexual behavior); *State v. Durham*, 327 S.E.2d 920 (N.C. Ct. App. 1985) (child's history of nightmares of sexual assaults admissible); *Snider v. State*, 412 N.E.2d 230 (Ind. 1980) (complainant's bet that she could "take her father to bed" arguably admissible under rape shield law prohibiting references to victim's past sexual conduct); *Bobo v. State*, 589 S.W.2d 5, 8 (Ark. 1979); *State v. Zaehringer*, 280 N.W.2d 416, 420 (Ia. 1979) (posing in the nude for a photograph not within the rape shield law).

---

[10] *Rape Law Revision, supra*, p. 4; Galvin, *supra*, at 906, Appendix, Table 1.

Books, movies, conversations, or observing others engaged in sexual activity are said to be sources of information as to sexual matters "other than personal experience," and not sexual conduct. Galvin, *supra*, at 868.

We conclude that the act of writing about sexual desires or activities is not itself prior sexual conduct. Cross-examination of the complainant as to whether she composed or copied the notes would not constitute an inquiry into the complainant's "character for unchastity." An eleven-year-old girl may suffer embarrassment through admitting publicly that she authored or copied writings sexual in nature, but that is not the kind of activity the law is intended to shield. We conclude that the acts of composing or copying the notes are not prior sexual conduct.

We conclude written expressions of sexual desires are not conduct or behavior. In the "Dear Spencer" note the statements "I want you," and "[I] wanted you to fuck me," are expressions of sexual desires. The statute does not shield such expressions.

The sentence in the "Dear Spencer" note—"You would not fock [sic] me"—may describe an encounter between the complainant and Spencer in which her request of Spencer to have sexual intercourse was declined. If it does, arguably, the sentence would be evidence of prior sexual conduct and would be inadmissible under the rape shield law. However, the sentence may describe the complainant's subjective conclusion that Spencer would not have sexual intercourse with her because she was too young. So construed, the sentence would not describe prior sexual conduct. The state did not make a record on this point which we can

review.[11] The state's apparent position is that the contents of the "Dear Spencer" note are prior sexual conduct regardless of whether the note was intended to describe an actual encounter between Spencer and the complainant. We disagree. There is nothing in the language of the rape shield statute which compels the conclusion the state urges. Nor is there anything in the legislative history which suggests that to further the intent of the legislature we should adopt the state's suggested construction. Therefore, consistent with our responsibility to construe sec. 972.11(2), Stats., to save its constitutionality as applied to the facts herein, we conclude that the "Dear Spencer" note does not describe prior sexual conduct of the complainant and is admissible.

*By the Court.*—Order affirmed.

GARTZKE, P.J. (*concurring*). I conclude that the trial court properly held that the notes are relevant because they tend to show the complainant had a motive to falsify her accusation and to show she had knowledge of sexual matters. I disagree with the holdings by the trial court and the majority that the notes are not evidence of sexual conduct within the meaning of sec. 972.11(2)(a), Stats. I conclude the notes are such evidence and to exclude them from evidence would deprive defendant of his constitutional right of confron-

---

[11] The state had the burden to show the facts on which it relied to exclude the note. *See Loeb v. Board of Regents*, 29 Wis. 2d 159, 164, 138 N.W.2d 227, 230 (1965) (a party seeking judicial process to advance his position carries the burden of proof). It chose, perhaps for sound tactical reasons, to not produce evidence as to the meaning of the "Dear Spencer" note or the complainant's knowledge of the terms used therein.

491

tation and that in this particular case, that right overrides the state's policy of exclusion. Consequently, sec. 972.11 is unconstitutional in its application to the defendant. I therefore agree that the order admitting the notes in evidence should be affirmed.

Our review of a trial court's ruling on relevancy is limited to whether the trial court has abused its discretion. *State v. Pharr*, 115 Wis. 2d 334, 345, 340 N.W.2d 498, 503 (1983). Defendant offers the notes for two reasons. First, he contends that the notes are admissible to show that his daughter has fabricated the three alleged assaults to retaliate for his threatening to disclose to her mother the fact that she had written them. Second, he contends that the notes are admissible to show that his eleven-year-old daughter was knowledgeable about sexual matters.

The trial court held that the notes were admissible for the reasons defendant relies upon. The state argues that the notes are inadmissible under sec. 972.11(2), Stats., but makes no contention that the notes are irrelevant. It is well, however, that we emphasize the relevancy in view of the reasons why defendant wants the jury to read them.

Evidence tending to show a complaining witness has a motive to falsify a charge of sexual assault is relevant. The credibility of a witness is always relevant when the facts are in dispute. A criminal defendant on cross-examination has the right to bring out the motives of the state's witnesses. *State v. Lenarchick*, 74 Wis. 2d 425, 446-48, 247 N.W.2d 80, 92-93 (1976). Evidence that a witness has a motive to lie is therefore admissible, subject to limitations imposed on its use and the discretion of the trial court. *State v. Williamson*, 84 Wis. 2d

370, 383, 267 N.W.2d 337, 343 (1978); *Penister v. State*, 74 Wis. 2d 94, 102–03, 246 N.W.2d 115, 120 (1976).

Accordingly, evidence of prior sexual conduct is relevant if it tends to show that the complainant has a motive to falsely accuse a defendant of a sexual assault. *See Commonwealth v. Joyce*, 415 N.E.2d 181 (Mass. 1981) (defendant entitled to show that complainant had been previously charged with prostitution and that her claim he raped her was motivated by a desire to avoid further prosecution); *Commonwealth v. Black*, 487 A.2d 396 (Pa. Sup. Ct. 1985) (father entitled to show his thirteen-year-old daughter wanted to punish him because he terminated her sexual relationship with her brother); *State v. Jalo*, 557 P.2d 1359, 1360 (Or. Ct. App. 1976) (defendant entitled to testify that ten-year-old falsely accused him because he had learned of her sexual conduct with others and had told her he would inform her parent). *See also* Galvin, *Shielding Rape Victims in the State and Federal Courts: A Proposal to a Second Decade*, 70 Minn. L. Rev. 763 (1986) (evidence of complainant's prior sexual conduct which provides motive to fabricate charge is "highly probative" as to complainant's veracity); and Comment, *Rape Shield Statutes: Constitutional Despite Unconstitutional Exclusions of Evidence*, 85 Wis. L. Rev. 1219, 1244 (1985) (evidence of prior sexual conduct relevant if it exposes complainant's motive to falsely accuse defendant of sexual assault).

Evidence of a child's prior sexual conduct may be relevant to the child's knowledge about sexual contact and therefore to the question whether the contact occurred. The evidence tends to counter a natural inference that the charged assault occurred because a child complainant is not expected to know about sexual matters. 85 Wis. L. Rev. at 1234, and cases at n. 55. The

493

value of such evidence has been questioned. *See, e.g., People v. Arenda,* 330 N.W.2d 814, 818 (Mich. 1982) (evidence has low probative value except for young and inexperienced child and other evidence may suffice); *Commonwealth v. Black,* 487 A.2d at 400–401 n. 10 (evidence may be relevant under limited circumstances).

Since the notes are relevant, the question is whether they are inadmissible under Wisconsin's Rape Shield statute, sec. 972.11, Stats. That statute applies because defendant is accused of a crime under sec. 940.225, Stats., sexual assault.

Section 972.11(2)(b), Stats., provides in relevant part:

If the defendant is accused of a crime under s. 940.225, any evidence concerning the complaining witness's prior sexual conduct or opinions of the witness's prior sexual conduct and reputation as to prior sexual conduct shall not be admitted into evidence during the course of the hearing or trial, nor shall any reference to such conduct be made in the presence of the jury, except the following, subject to s. 971.31(11):

1. Evidence of the complaining witness's past conduct with the defendant.

2. Evidence of specific instances of sexual conduct showing the source or origin of semen, pregnancy or disease, for use in determining the degree of sexual assault or the extent of injury suffered.

3. Evidence of prior untruthful allegations of sexual assault made by the complaining witness.

(c) Notwithstanding s. 901.06 [pertaining to limited admissibility], the limitation on the admission of evidence of or reference to the prior sexual conduct of the complaining witness in . par. (b) applies regardless of the purpose of the admission or

494

reference unless the admission is expressly permitted under par. (b)1, 2 or 3.

The first note, beginning "Dear Spiencer," is an explicit statement of a past desire for sexual intercourse. The second note, the "kissing license," is at least a sexual fantasy and perhaps a proposal for a sexual encounter short of intercourse.

Each note fails to qualify under any of the three exceptions listed in sec. 972.11(2)(b)1, 2 and 3, Stats. Neither note is evidence of the daughter's past conduct with the defendant, neither is proposed to be used in determining the degree of sexual assault or the extent of injuries suffered, and neither is proposed evidence of prior untruthful allegations of sexual assault.

The question is then whether these notes constitute evidence concerning the daughter's "prior sexual conduct." The answer turns on the definition of "sexual conduct" in sec. 972.11(2)(a), Stats., which provides:

> "[S]exual conduct" means any conduct or behavior relating to sexual activities of the complaining witness, including but not limited to prior experience of sexual intercourse or sexual contact, use of contraceptives, living arrangement and life-style.

The elements of "sexual conduct" so defined are (1) conduct or behavior (2) relating to (3) sexual activities (4) of the complaining witness.[1]

---

[1] None of the cases relied upon by the majority is useful. None of the jurisdictions in which those cases were decided has a definition of "sexual conduct" similar to that in sec. 972.11(2)(a), Stats. Neither *People v. Arenda*, 330 N.W.2d 814 (Mich. 1982), nor *People v. Hackett*, 365 N.W.2d 120, 128 (Mich. 1984), assists us, since the Michigan statute, sec. MSA 188. Sec. 28.788(1) et seq., excludes evidence of the victim's "sexual conduct" without defining the term.

It is easier to work from the elements by ignoring their numerical sequence. There is no disputing the fact that the fourth element is met: defendant's daughter wrote the notes and she is the complaining witness.

When fixing the meaning of remaining statutory elements of "sexual conduct," care must be taken to give effect, if possible, to every word. *Niagara of Wis. Paper Corp. v. DNR*, 84 Wis. 2d 32, 44, 268 N.W.2d 153, 158 (1978). The meaning of "conduct or behavior" must therefore differ from that of "sexual activity." We are, of course, to give the words their ordinary and common meaning, and we use a recognized dictionary for that purpose. *Id.*

The second statutory element is "sexual activities." "Activities" describes a broad range of human functions. Merriam-Webster's Third International Dictionary (1976) defines "activity" not only as a "physical motion or exercise of force" but also as a "process (as searching, desiring, learning or writing) that actually or potentially

---

*State v. Smith*, 263 S.E.2d 371 (N.C. App. 1980), involves North Carolina Rule 412(a), which defines "sexual behavior" as "sexual activity of the complainant other than the sexual act which is at issue in the indictment on trial" and does not distinguish between "conduct or behavior" on the one hand, and "sexual activities" on the other. *State v. Durham*, 327 S.E.2d 920 (N.C. App. 1985), is unhelpful for the same reason. *Snider v. State*, 412 N.E.2d 230 (Ind. 1980), rests on Ind. Code sec. 35-1-32.5-1 (Burns 1979 Repl.), where victim's past sexual conduct is inadmissible but not defined. *Bobo v. State*, 589 S.W.2d 5 (Ark. 1979), relies on Ark. Crim. Code sec. 41-1810.3, stating " 'sexual conduct' means deviate sexual activity, sexual contact, or sexual intercourse." Section 41-1801 defines narrowly each of these terms. *State v. Zaehringer*, 280 N.W.2d 416 (Iowa 1979), applied Iowa Rule of Evidence 412(d), which defines "past sexual behavior" as "sexual behavior other than sexual behavior with respect to which sexual abuse is alleged."

involves mental function." This is consistent with everyday speech. People commonly refer to "physical activities" and "mental activities." The only modification or limitation on "activities" in sec. 972.11(2) (a), Stats., is that they must be sexual, and no dictionary is necessary to understand that word. I find irresistible the conclusion that "sexual activities" as used in sec. 972.11(2) (a) includes an individual's sexual mental activity, such as sexual desire or fantasy, as well as physical acts or motions such as touching or sexual intercourse.

I turn next to the first element of the definition: "conduct or behavior." According to Merriam-Webster, so far as is pertinent, "conduct" is "behavior in a particular situation or relation or on a specified occasion." According to the same authority, "behavior" has various definitions, including "anything that an organism does that involves action and response to stimulation (2): the response of an individual . . . to the whole range of factors constituting its environment."

The second element, "relating to" is far broader than "is" which usually connotes an equivalence. According to Merriam-Webster's Third International Dictionary, the verb "relate" in its pertinent sense means "to be in relationship: have reference . . . . " Use of the verb "relate" is another indication that "conduct or behavior" is different from "sexual activities."

Since the statute distinguishes between "conduct or behavior" and "sexual activity" and requires the former only to "relate" to the latter, I conclude that "conduct or behavior," for purposes of the definition, need not be sexual. Writing, speaking, and describing are therefore forms of conduct or behavior, within the meaning of the statute. Such conduct or behavior is sexual conduct if it relates to sexual activities, including sexual desires or

497

fantasies. Again, the conduct or behavior may be solitary as well as that between two persons.

I therefore conclude that "sexual conduct," for purposes of sec. 972.11(2) (a), Stats., includes a complainant's statements, written or oral, describing or expressing the complainant's sexual desires or fantasies.

I reach this conclusion on the basis of the usual and ordinary meaning of the words used in sec. 972.11(2) (a), Stats. For that reason, I have not employed the rules of statutory construction. those are to be applied only to ambiguous statutes and not to create ambiguities. *State ex rel. Milwaukee County v. WCCJ*, 73 Wis. 2d 237, 241, 243 N.W.2d 485, 487 (1976). Hence, the rule of construction which requires us to avoid a constitutional objection, *State v. Fry*, 131 Wis. 2d 153, 165, 388 N.W.2d 565, 570 (1986), is inapplicable.

I return to the notes at issue and summarize my conclusions. Defendant's daughter, the complainant, wrote the notes. Each note expresses a sexual desire or fantasy. A sexual desire or sexual fantasy is a sexual activity. I conclude that each note is evidence of "conduct or behavior relating to sexual activities of the complainant" within the meaning of sec. 972.11(2) (a), Stats. Each note therefore constitutes evidence of "prior sexual conduct" of the complainant. Because neither note comes within an exception to the general exclusion, each is inadmissible in evidence by virtue of sec. 972.11(2) (b).

An examination of the constitutionality of the statutory exclusion from evidence, as applied to this particular defendant, is necessary.

Every defendant has a sixth amendment right "to be confronted with the witnesses against him." The

sixth amendment is applicable to the states. *Davis v. Alaska*, 415 U.S. 308, 315 (1974).

The primary right secured by the confrontation clause is the opportunity to test the truth of testimony by cross-examination. *Davis*, 415 U.S. at 316. This includes cross-examination "directed to revealing possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." *Id.* The right of confrontation must, however, be balanced against the state's interest in prohibiting the use of evidence for purposes of cross-examination. If confrontation is paramount to the state's policy, then a statute prohibiting the use of the evidence is unconstitutional. *Id.* at 320.

Because a constitutional right is involved, the court of appeals should determine whether the state's interest in its rule of evidence is paramount to defendant's right to confront the witness with the notes. The historical facts are undisputed. Under such circumstances an appellate court has a duty to determine whether a "constitutional fact" exists. *See e.g., State v. Woods*, 117 Wis. 2d 701, 715–16, 345 N.W.2d 457, 465 (1984) (if the historical facts are undisputed, voluntariness of confession independently reviewed by appellate court), *habeas corpus granted on other grounds, Woods v. Clusen*, 605 F. Supp. 890 (E.D. Wis. 1985), *aff'd*, 794 F.2d 293 (7th Cir. 1986). Although the task before us involves a balancing, it is one involving conflicting policies and rights. An appellate court ought to be able to perform that function as well as a trial court, if, as here, the facts are established.

Defendant's right to use the notes his daughter made far outweighs the state's interest in its "prior sexual conduct" evidentiary rule. Defendant is accused of

three counts of first-degree sexual assault, sec. 940.225(1), Stats., a Class B felony punishable by imprisonment not exceeding twenty years on each count. The evidence has substantial probative force, even "highly probative" force. *Galvin, supra.* The jury could reasonably infer that defendant's daughter, an eleven-year-old girl, could fear that her mother would be distraught and angry and likely to take corrective and possibly punitive measures on learning her child wrote the notes. The jury could reasonably infer that defendant's daughter would be strongly motivated to distract her mother's concern from correction and perhaps punishment to sympathy, and might invent an outrageous wrong to create that sympathy.[2]

Consequently, unless some other method exists by which the forcefulness of the probative value of the notes could be brought to the attention of the jury through some substituted evidence, the exclusionary rule embraced in sec. 972.11(2), Stats., is unconstitutional as applied to this defendant, because it violates his right to confront her with the evidence.

My conclusion regarding the constitutionality of sec. 972.11(2), Stats., is limited to its application to defendant. I do not conclude that sec. 972.11(2) is unconstitutional on its face or under all circumstances.[3]

---

[2] That the jury in the first trial could not reach a unanimous conclusion supports the possibility that at least some jurors were influenced by the notes.

[3] Nor have I found it necessary to narrow Wisconsin's Rape Shield Statute to save its constitutionality. The legislature adopted an extraordinarily broad statute. When declaring that all evidence of a complainant's prior sexual conduct (with three exceptions) is never probative, the legislature assumed the risk of the statute's unconstitutional application under some circumstances. At least one other jurisdiction has found a remedy for the problem. *See* Fed. Rule of

Other courts have reached conclusions similar to mine. The Oregon Court of Appeals held that the state's policy to protect a sex crime complainant must be subordinated to a defendant's constitutional right to confrontation. *State v. Jalo*, 557 P.2d 1359, 1362 (Or. Ct. App. 1976). In *Commonwealth v. Joyce*, 415 N.E.2d 181, 187–88 (Mass. 1981), the Massachusetts supreme judicial court concluded the state's rape shield statute exclusionary rule must give way to the constitutionally-based right to effective cross-examination. The case was remanded for the trial court to exclude specific evidence of a complainant's sexual conduct insofar as was possible without infringing the defendant's right to show bias. In *Commonwealth v. Black*, 487 A.2d 396, 401 (Pa. Super. Ct. 1985), the court reversed and remanded for a hearing on whether the probative value of the evidence outweighed its prejudicial effect and whether alternative means existed for proving bias or motive or to challenge credibility.[4] The Pennsylvania Supreme Court concluded that the state's rape shield law was unconstitutional to the extent it prohibited the admission of evidence properly attacking the credibility of the defendant's thirteen-year-old daughter.

I therefore join the majority opinion only as to the result it reaches on the admissibility of the evidence at issue. I respectfully but emphatically disagree with the

Evid. Rule 412(b)(1) (evidence of a victim's past sexual behavior is inadmissible unless it "is constitutionally required to be admitted.") Other jurisdictions have saved Rape Shield Statutes from the partial destruction imposed by this majority. They did so as I would: by finding the statutes unconstitutional only in application as to a particular defendant.

[4] Because it is the nature of the notes which makes them admissible, I would not remand for such finding.

majority's reasoning and the precedent it establishes, which, in my view, unnecessarily and disastrously affects the scope of Wisconsin's Rape Shield Statute.