NO. COA13-693

NORTH CAROLINA COURT OF APPEALS

Filed: 21 January 2014

STATE OF NORTH CAROLINA

    v.

LUCIUS ELWOOD MCLEAN

Guilford County
Nos. 08 CRS 86532-33, 35-36,
39; 87623

Appeal by defendant from judgments entered 21 August 2012 by Judge William Z. Wood, Jr. in Guilford County Superior Court. Heard in the Court of Appeals 6 November 2013.

> *Attorney General Roy Cooper, by Assistant Attorney General Ward Zimmerman, for the State.*

> *Appellate Defender Staples S. Hughes, by Assistant Appellate Defender Andrew DeSimone, for defendant-appellant.*

HUNTER, JR., Robert N., Judge.

Following final judgments as to the charges against him, Lucius Elwood McLean ("Defendant") appeals a pre-trial order entered 4 March 2010 by Judge Ronald E. Spivey in Guilford County Superior Court. The challenged order denied Defendant's pre-trial motion for DNA testing pursuant to N.C. Gen. Stat. § 15A-267(c) (2013). Defendant contends that the trial court erred as a matter of law in denying his motion because the absence of his DNA on

shell casings found at the scene, if established, would have been relevant to the State's investigation and material to his defense. For the following reasons, we find no error and affirm the trial court's order.

## I.    Factual & Procedural History

On 20 August 2012, Defendant was convicted on two counts of attempted first-degree murder, two counts of assault with a deadly weapon with the intent to kill inflicting serious injury, one count of discharging a firearm into an occupied building, and one count of possession of a firearm after having been convicted of a felony.[1] The evidence presented at trial tended to show the following.

On 16 April 2008, Defendant agreed to rent commercial property located at 2801 Patterson Avenue in Greensboro from Stuart Elium ("Mr. Elium"). Defendant indicated that he needed the property to open an arcade. Defendant gave Mr. Elium a down payment and entered the space. Mr. Elium testified that Defendant arrived at their meeting in a "bronzish Jaguar."

Immediately next door to Defendant's property was an established night club operated by Reginald Green ("Mr. Green") called "Club Touch." Mr. Green also rented from Mr. Elium. Club Touch generally operated between 10 p.m. and 2 a.m. and served

---

[1] Defendant stipulated to a prior felony conviction at trial.

liquor. Derry George ("Mr. George") was the club's manager. Robert Willis ("Mr. Willis") and Mark Stephens ("Mr. Stephens") worked security.

On 17 April 2008, Mr. George arrived for work between 7 and 8 p.m. and noticed a group of men sitting outside the club next to Defendant's property. When Mr. George went inside Club Touch, he noticed that a break-in had occurred and that equipment had been stolen. Mr. George called the police, who investigated the break-in and questioned the men sitting outside Defendant's property. The men told the police that they were waiting on someone to come let them into Defendant's building.

An hour or so later, Defendant arrived on the scene and spoke to Mr. George about the incident. Mr. George testified that Defendant's men were upset about being questioned in connection to the break-in, so Mr. George wanted to let Defendant know that there were no hard feelings. Defendant was cordial to Mr. George and the two talked about Defendant's plan for opening a business next door. Defendant told Mr. George that he wanted to open a "2 to 6"—meaning that Defendant's establishment would be open from 2 a.m. to 6 a.m. and be a place where Club Touch's patrons could go after the club closes. After their conversation, Mr. George telephoned Mr. Green to inform him of Defendant's plans and

expressed concern that Defendant's proposed business might affect Club Touch's liquor license.

At around 10 p.m. that same night, Defendant and his men placed balloons and a sign outside their building that read "The Party is Here" and played music loudly from their establishment. Mr. George indicated that Defendant arrived that evening in a "gold-colored" Jaguar. Mr. George and Mr. Willis testified that as the night was coming to an end, Defendant and his men approached Club Touch and yelled, "We're hood around here" and "It's hood out here. Going to be real."

The next morning, Mr. Green called Mr. Elium to discuss what had happened. Thereafter, Mr. Elium informed Defendant that their rental arrangement was not going to work out. Mr. Elium returned Defendant's money, reclaimed the keys to the property, and assisted Defendant in vacating the premises.

On 20 April 2008, at approximately 2:45 a.m., multiple cars arrived at Club Touch, circled around the back of the club, and pulled up to the entrance. Among the cars was Defendant's gold Jaguar. Mr. George, Mr. Willis, and Mr. Stephens were all standing at the front door.

Mr. George, Mr. Willis, and Mr. Stephens testified that Defendant emerged from the gold Jaguar and asked for the owner of

the club. During a heated exchange, Defendant stated, "It's real" and "If I can't have my club open, y'all can't have y'all's open." Mr. Willis testified that upon hearing these words, he laughed at Defendant. Thereafter, Defendant stated, "Man, it's real out here . . . you think I'm playing." Defendant then popped his trunk, retrieved a long black SKS rifle, and said, "Oh, you're not scared." Defendant then cocked the gun and stated, "Oh, you're really not going to run." At that point, Mr. George and Mr. Willis retreated into the Club for cover, and Mr. Stephens retreated to his pickup truck in the parking lot.

Thereafter, multiple shots were fired into the club from outside the entryway. Mr. George was shot in the hand and in the side of his body. Mr. Willis was shot in the leg. Another man from Defendant's entourage opened fire on the club with a handgun. After opening fire on the club, Defendant and his entourage fled the scene.

Police arrived on the scene around 3:15 a.m. and began their investigation. Six 7.62 caliber shell casings consistent with an SKS rifle and twelve .45 caliber shell casings were recovered from the crime scene. The guns were never found. In the days that followed, Mr. George, Mr. Willis, and Mr. Stephens all identified

Defendant as the shooter in a photo array with near certainty. They testified to the same in open court.

On 24 April 2008, police stopped Defendant's sister in the gold Jaguar and seized the vehicle. During an inventory of the vehicle, police recovered a live 7.62 caliber bullet from underneath the passenger seat. No identifiable fingerprints were found on the bullet. After processing the vehicle, the police called Defendant's sister to retrieve it. However, Defendant's sister failed to pick the vehicle up and it was released to a local auto dealer.

On 10 July 2008, police received information that Defendant had been spotted at a local apartment complex. Acting on this information, the police were able to locate and stop Defendant, who was driving the same gold Jaguar.[2] Thereafter, Defendant was arrested and taken into custody.

Prior to trial, Deputy Sheriff James Swaringen ("Deputy Swaringen") was transporting Defendant from the courthouse to the jail when he overheard a conversation Defendant had with another prisoner. Deputy Swaringen testified that Defendant stated, "I can't believe they have me over here for this. I shot the guy in

---

[2] It is unclear from the record how or when Defendant reacquired the same gold Jaguar after it was released by the police to a local auto dealer.

the calf and there wasn't even an exit wound and they've had me sitting up here for 35 months for this? They're just trying to see if I crack being up here so long."

On 20 January 2010, Defendant moved the trial court pursuant to N.C. Gen. Stat. § 15A-267(c) for pre-trial DNA testing of the shell casings recovered from the crime scene. Specifically, Defendant's written motion indicated that he wanted "to test the shell casings to see if there is any DNA material on the shell casings that may be compared to the Defendant." Defendant's written motion requested DNA testing on the following grounds:

1. The Defendant is charged with attempted 1st Degree Murder in that it is alleged on or about April 20th in the early morning hours that the Defendant fired shots into a club in Greensboro injuring three people. Numerous shell casings were found from the weapon discharged outside the club on April 20, 2008.

2. The Defendant intends to plead not guilty and contends that he did not discharge a firearm.

3. The Defendant would like to test the shell casings to see if there is any DNA material on the shell casings that may be compared to the Defendant.

At the motion hearing, counsel for Defendant argued as follows:

It's my understanding that the State has these shell casings in their custody. We've talked about a plea bargain in this case. There's not going to be a plea bargain in this case.

My client says he's not guilty of this offense. In order to pursue all efforts to show that he's not guilty, I'd like to have the opportunity to test these shell casings. There may or may not be DNA on the shell casings, but we won't know until we test them; until we try. So we'd like to have the opportunity to test those shell casings to see if there's any DNA evidence on there and have it compared to [Defendant's]. So that's what—I think that's a reasonable request, Your Honor.

Defendant also moved the trial court to order other discovery including fingerprint testing on the shell casings at issue. At the motion hearing, counsel for Defendant indicated that no fingerprint testing had been performed on the shell casings to date.

By order dated 4 March 2010, the trial court denied Defendant's motion for pre-trial DNA testing. In the same order, the trial court ordered that the shell casings at issue be subjected to fingerprint testing "to determine what fingerprint evidence, if any, was present and whether or not any fingerprint evidence found on those shell casings match the Defendant's prints." No fingerprints were found.

Thereafter, Defendant was tried and convicted on all counts and sentenced to two consecutive terms of 251 to 311 months in prison for the attempted first-degree murder convictions and to

concurrent sentences for the remaining convictions.  Defendant gave timely notice of appeal in open court.

## II.  Jurisdiction

Defendant's post-judgment appeal of the trial court's order denying Defendant's motion for DNA testing lies of right to this court pursuant to N.C. Gen. Stat. §§ 7A-27(b), 15A-1444(a) (2013). *See also* N.C. Gen. Stat. § 15A-270.1 (2013).

## III. Analysis

The only question presented to this Court by Defendant's appeal is whether the trial court erred in its application of N.C. Gen. Stat. § 15A-267(c).  Defendant contends that pursuant to the cited statute, the trial court was required to order pre-trial DNA testing on shell casings found at the crime scene.  We disagree.

"Alleged statutory errors are questions of law, and as such, are reviewed *de novo*."  *State v. Mackey*, 209 N.C. App. 116, 120, 708 S.E.2d 719, 721 (2011) (internal citation omitted).  "'Under a *de novo* review, the court considers the matter anew and freely substitutes its own judgment' for that of the lower tribunal." *State v. Williams*, 362 N.C. 628, 632-33, 669 S.E.2d 290, 294 (2008) (quoting *In re Greens of Pine Glen, Ltd. P'ship*, 356 N.C. 642, 647, 576 S.E.2d 316, 319 (2003)).

N.C. Gen. Stat. § 15A-267(c) provides:

Upon a defendant's motion made before trial in accordance with [N.C. Gen. Stat. §] 15A-952, the court shall order the Crime Laboratory or any approved vendor that meets Crime Laboratory contracting standards to perform DNA testing . . . upon a showing of all of the following:

(1) That the biological material is relevant to the investigation.

(2) That the biological material was not previously DNA tested or that more accurate testing procedures are now available that were not available at the time of previous testing and there is a reasonable possibility that the result would have been different.

(3) That the testing is material to the defendant's defense.

*See also* N.C. Gen. Stat. § 15A-269(a) (2013) (outlining similar requirements for a post-conviction motion for DNA testing). Accordingly, by the plain language of this statute, the burden is on Defendant to make the required showing under subsections (1), (2), and (3) before the trial court. Absent the required showing, the trial court is not statutorily obligated to order pre-trial DNA testing. *Cf. State v. Foster*, ___ N.C. App. ___, ___, 729 S.E.2d 116, 120 (2012) (describing the required showing of materiality in the post-conviction context as a "condition precedent to a trial court's statutory authority to grant a motion under [N.C. Gen. Stat.] § 15A-269").

Here, Defendant failed to establish the required showing under N.C. Gen. Stat. § 15A-267(c)(1) and (3) in his written motion and before the trial court at the motion hearing.[3] Defendant's written motion stated in cursory fashion that "Defendant intends to plead not guilty and contends that he did not discharge a firearm" and that "Defendant would like to test the shell casings to see if there is any DNA material on the shell casings that may be compared to Defendant." At the motion hearing, defense counsel added: "[i]n order to pursue all efforts to show that he's not guilty . . . we'd like to have the opportunity to test those shell casings to see if there's any DNA evidence on there and to have it compared to [Defendant's]." Thus, before the trial court, Defendant failed to sufficiently demonstrate how the absence of his DNA on the shell casings would be either relevant to the investigation or material to his defense at trial.

Before this Court, Defendant contends that the presence of biological material on the shell casings at issue would have been relevant to the investigation because "such biological material would tend to identify the actual perpetrator." Defendant further contends that the absence of his DNA on the shell casings, if

---

[3] The State conceded at the hearing that the shell casings had not been previously tested for DNA, thereby satisfying the showing required by N.C. Gen. Stat. § 15A-267(c)(2).

established, would be material to his defense because such a showing would tend to identify someone else as the shooter and corroborate his alibi defense.[4]  We address each in turn.

"'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  N.C. R. Evid. 401.  The State does not challenge Defendant's relevancy argument, and we find it sufficiently persuasive to satisfy the required showing under N.C. Gen. Stat. § 15A-267(c)(1).  The presence of DNA evidence on a spent shell casing has some tendency to identify the person who fired the bullet.

However, while we agree that the presence of DNA evidence on the shell casings at issue would be relevant to the investigation, we disagree that the absence of Defendant's DNA on the shell casings would be material to Defendant's alibi defense in this case.

As used in N.C. Gen. Stat. § 15A-269(a)(1), our Court has adopted the *Brady* definition of materiality.  *See State v. Hewson*,

---

[4] At trial Defendant testified that he was in Maryland attending his cousin's grandmother's funeral at the time of the shooting. Defendant could provide no additional witnesses or evidence corroborating his alibi.

___ N.C. App. ___, ___, 725 S.E.2d 53, 56 (2012) (stating that evidence is "material" for purposes of N.C. Gen. Stat. § 15A-269(a)(1) if "there is a 'reasonable probability' that its disclosure to the defense would result in a different outcome in the jury's deliberation" (quotation marks and citations omitted)). While such a standard is appropriate when evaluating motions made in the post-trial context pursuant to N.C. Gen. Stat. § 15A-269, we find that such a standard is inappropriate when evaluating pre-trial motions made pursuant to N.C. Gen. Stat. § 15A-267(c). Whether a particular piece of DNA evidence would have influenced the outcome of a trial can only be determined after the trial is completed and the judge has had an opportunity to compare that DNA evidence against the cumulative evidence presented at trial.[5] Accordingly, for purposes of applying N.C. Gen. Stat. § 15A-267(c)(3), we resort to the plain meaning of "material" and hold that biological evidence is material to a defendant's defense where

_____

[5] Although Defendant waited until after he was convicted to appeal in the instant case, our General Assembly has provided a right to appeal pre-trial orders denying motions for DNA testing on an interlocutory basis. *See* N.C. Gen. Stat. § 15A-270.1 (2013) ("The defendant may appeal an order denying the defendant's motion for DNA testing under this Article, including by an interlocutory appeal."). In such situations, it would be difficult if not impossible for this Court to determine whether disclosure of a DNA test result would have a reasonable probability of changing a jury's verdict.

such biological evidence has "some logical connection" to that defense and is "significant" or "essential" to that defense. *Black's Law Dictionary* 998 (8th ed. 2004).

Here, we hold that the absence of Defendant's DNA on the shell casings at issue would not be material to his alibi defense. At the outset, we note that a showing of materiality under N.C. Gen. Stat. § 15A-267(c)(3) carries a higher burden than a showing of relevancy under N.C. Gen. Stat. § 15A-267(c)(1). Thus, while the presence of DNA evidence may have relevance to an investigation, it does not follow that such evidence is necessarily material to a defendant's defense at trial.

Defendant contends that the absence of his DNA and a positive showing of someone else's DNA on the shell casings would be material to his alibi defense because it would have "tended to show that someone other than [Defendant] fired the SKS assault rifle[.]"[6] However, the absence of Defendant's DNA from the shell casings would only provide evidence of his absence from the scene if one would otherwise expect to find his DNA on the shell casings

---

[6] Defendant's contention assumes the presence of biological material on the shell casings—a premise that has not been established in this case.

in such a situation.[7]  Even then, such evidence would only justify the inference that Defendant was absent—it would not provide "essential" or "significant" evidence corroborating Defendant's alibi.  Accordingly, we hold that the absence of Defendant's DNA on the shell casings at issue, if established, would not have a logical connection or be significant to Defendant's defense that he was in Maryland at the time of the shooting.

Furthermore, we note like its counterpart in the post-conviction setting, N.C. Gen. Stat. § 15A-267(c) outlines a procedure for the DNA testing of "biological material," not evidence in general.  *Cf. State v. Brown*, 170 N.C. App. 601, 609, 613 S.E.2d 284, 288-89 (2005) ("[N.C. Gen. Stat. § 15A-269(a)] provides for testing of 'biological evidence' and not evidence in general.  Since defendant desires to demonstrate a lack of biological evidence, the post-conviction DNA testing statute does not apply." (internal citation omitted)), *superseded by statute on other grounds as stated in State v. Norman*, 202 N.C. App. 329, 332-33, 688 S.E.2d 512, 515 (2010).  Here, the purpose of Defendant's request for DNA testing is to demonstrate the absence of his DNA on the shell casings at issue.  By its plain language,

---

[7] Such an expectation is undermined by the fact that shooting a gun does not require one to load or handle bullets.

N.C. Gen. Stat. § 15A-267(c) contemplates DNA testing for ascertained biological material—it is not intended to establish the absence of DNA evidence. It is unknown in this case if there is any biological material that may be tested on the shell casings. Indeed, at the motion hearing, defense counsel stated "[t]here may or may not be DNA on the shell casings, but we won't know until we test them; until we try." Thus, to the extent that Defendant's motion sought to establish a lack of DNA evidence on the shell casings, we hold that such a motion is not proper under N.C. Gen. Stat. § 15A-267(c).

## IV. Conclusion

For the foregoing reasons, we affirm the order of the trial court denying Defendant's motion under N.C. Gen. Stat. § 15A-267(c) for pre-trial DNA testing.

Affirmed.

Judges ROBERT C. HUNTER and CALABRIA concur.