DIETZ, Judge.
Defendant Tracy L. Putnam appeals from convictions of statutory sexual offense and indecent liberties with a child. On appeal, Putnam argues that the trial court erred in denying his motion for pre-trial DNA testing of a tampon used by the 14-year-old victim, S.R. The victim testified that Putnam touched the tampon when he threw it into a wooded area, from which police recovered it several weeks later. Putnam argues that the absence of his DNA on that tampon would undermine the victim's testimony that Putnam touched the tampon before he sexually assaulted her.
Putnam also argues that the trial court erred in excluding testimony that S.R. previously had accused another man of watching her undress. The trial court excluded that testimony on the ground that there was no evidence the previous accusation was false and, therefore, the testimony was substantially more prejudicial than probative under Rule 403.
We find no error in the trial court's rulings. This Court previously has held that the statute governing pre-trial DNA testing does not apply to tests requested to show the absenceof DNA on an object. State v. McLean,---N.C.App. ----, ----, 753 S.E.2d 235, 239 (2014). Likewise, this Court has held that it is not an abuse of discretion to exclude under Rule 403 evidence that a sexual assault victim had previously made accusations against another person, unless there was direct evidence that those earlier accusations were false. State v. Anthony,89 N.C.App. 93, 96-97, 365 S.E.2d 195, 197 (1988). Because the trial court's rulings were consistent with existing precedent from this Court, we reject Putnam's arguments and find no error.
Facts and Procedural History
During the summer of 2011, the 14-year-old victim, S.R., lived with her grandmother and her grandmother's husband, Defendant Tracy L. Putnam. Putnam was the associate pastor at the church S.R. and her grandmother attended. On or about 10 July 2011, Putnam gave S.R. a ride home from an evening church service. On the way home, S.R. told Putnam about a boy she liked. Putnam told her that "he could teach [her] how to get anything [she] wanted from a guy." Putnam then pulled off onto a side road, drove down a path, and stopped his truck in a clearing. Putnam got out of the truck and told S.R. to get out.
Putnam tried to kiss S.R., but she pushed him away. Putnam started kissing S.R. on her neck, then pulled her shirt down and started "kissing" and "sucking" on her breasts. Putnam sat S.R. on top of his truck and unbuttoned her pants. S.R. told Putnam that she was wearing a tampon. Putnam pulled S.R.'s pants off, took the tampon out, and threw it into the woods. Putnam told S.R. to "just relax," but S.R. responded that she couldn't because "he was [her] grandpa and it was wrong." Putnam responded, "Just pretend like I'm not your grandpa for the night." Putnam then put his fingers inside S.R.'s vagina, licked her vagina, and "[s]tuck his tongue inside." Putnam tried to unbutton his pants, but S.R. used her legs to push him off; then she jumped off the truck, put her clothes back on, and got back in the truck.
Putnam instructed S.R. to "tell [your] daddy that we stopped and got some ice cream" and "that's why it took so long to go home." S.R. waited several weeks to tell anyone what had happened because she was "embarrassed" and "scared to tell anybody." S.R. eventually told Becky Hamrick, a deacon at her church, and Susan Smith, the youth minister. She then told her mother and father what had happened.
S.R.'s father called the police, and then S.R. and her parents went to the police station. Detective Curry interviewed S.R. and took her written statement. After the interview, S.R. and her parents went with Detective Curry to the location in the woods where S.R. said the incident took place. Detective Curry found a tampon in the woods. S.R. identified the tampon as hers because it "was in the same area" where she remembered Putnam throwing it and "it [was] the kind of tampon [she] used."
Detective Curry also interviewed Putnam. Initially, Putnam stated that he "had never done anything at all and never been in that area." He later admitted "that he knew where the area was" and that it "was a hundred yards from his mother's house," but said he had "never been there with [S.R.]." Eventually, Putnam told Detective Curry that "he had been to that area with [S.R.] in his truck" after church, but that "he had never touched her" and she "tried to kiss him." Putnam stated that S.R.'s pants "were never off except when she went to urinate at one point."
Detective Curry submitted the tampon to the SBI for analysis to determine whether S.R.'s DNA was on it, but the SBI refused to test it because their protocol dictates that they won't test an item if the police know to whom it belongs. Detective Curry did not submit the tampon to be tested for Putnam's DNA because he did not expect that any of Putnam's DNA would be on it as there was no indication that Putnam's bodily fluids ever touched the tampon.
Putnam was arrested and charged with statutory sexual offense and indecent liberties with a child. On 20 February 2014, Putnam filed a motion to continue for the purpose of obtaining the SBI's laboratory reports on the tampon submitted by law enforcement to the SBI for testing.
On 22 July 2014, before starting the trial, the court heard Putnam's motion to continue. The State informed the trial court that it submitted the tampon to the SBI to be tested for S.R.'s DNA, but that the State never received any DNA test results on the tampon. The State explained that the SBI refused to test the tampon for S.R.'s DNA because, under SBI's protocol, "they don't test the victim's items to determine whether they're the victim's items because the victim can identify them."
The State also explained that it did not request testing of the tampon for Putnam's DNA "because there wasn't any indication that he had produced any DNA that would have been in contact with that item" and thus "there's nothing to test for." Putnam's counsel argued that the tampon should be tested for Putnam's DNA because he allegedly touched it and threw it into the woods. The State responded that it "violates [SBI's] submission protocol" to test an item for touch DNA when the item was "left to the elements for three or four weeks" because "there's no controlled environment." The State argued that "[t]here's been no motion for the evidence to be released or tested by a private lab, and it doesn't meet the SBI lab submission criteria." The court asked Putnam's counsel if his motion was to have the tampon tested or a motion to continue because it had not been tested. Putnam's counsel responded, "To continue because it has not been tested and to test it."
Putnam's counsel then questioned Putnam regarding the DNA samples he had provided to law enforcement, but presented no further arguments as to why Putnam was entitled to DNA testing. The trial court denied Putnam's motions for continuance and DNA testing.
Also, before the start of the trial, the State filed a motion in limineasking the court to exclude any evidence of "the prior and subsequent sexual behavior of the victim or of any allegations of sexual abuse of the victim." The trial court did not rule on the motion before the trial began.
At trial, Putnam sought to cross-examine S.R. and her mother regarding an accusation S.R. had made that her stepfather had watched her undress. The trial court held an in camerahearing on the State's motion in liminerequesting that the court exclude any evidence of S.R.'s prior accusations. The State conceded that Rule 412 of the North Carolina Rules of Evidence, sometimes referred to as the "rape shield" rule, did not apply to this prior accusation by S.R. But the State argued that without some evidence suggesting that the prior accusation was false, the testimony was more prejudicial than prohibitive and thus inadmissible under Rule 403.
The trial court then allowed both parties to conduct a voir direexamination of S.R. regarding the accusation against her stepfather. S.R. stated that she had made the accusation-that he was watching her undress-and that as a result of the accusation she could no longer live with her mother because her mother was living with her stepfather. S.R. further stated that the accusation against her stepfather was true and she had never said it was not true. Putnam argued that the prior accusation was relevant to S.R.'s credibility because the fact that S.R.'s mother kicked her out of the house and continued to live with the stepfather indicated that her mother did not believe the accusation. The trial court agreed with the State's argument, finding that Putnam had not shown that the accusation was false. Thus, the trial court concluded it had discretion to exclude the testimony under Rule 403. The court then excluded the testimony.
The jury found Putnam guilty of both charges. He was sentenced to 240-297 months imprisonment for his statutory sexual offense conviction and given a suspended sentence of 17-21 months imprisonment for his indecent liberties with a child conviction. Putnam timely appealed.
Analysis
I. Denial of Motions for Continuance and Pre-Trial DNA Testing
Putnam first argues that the trial court erred in denying his motions for continuance and DNA testing. Putnam contends that he was entitled to DNA testing under N.C. Gen.Stat. § 15A-267(c) and that the trial court's denial of his motions violated his due process right to present a complete defense. We disagree.
Under N.C. Gen.Stat. § 15A-267(c),
(c) Upon a defendant's motion made before trial in accordance with G.S. 15A-952, the court shall order the Crime Laboratory or any approved vendor that meets Crime Laboratory contracting standards to perform DNA testing and, if the data meets NDIS criteria, order the Crime Laboratory to search and/or upload to CODIS any profiles obtained from the testing upon a showing of all of the following:
(1) That the biological material is relevant to the investigation.
(2) That the biological material was not previously DNA tested or that more accurate testing procedures are now available that were not available at the time of previous testing and there is a reasonable possibility that the result would have been different.
(3) That the testing is material to the defendant's defense.
Id.
Under this statute, "the burden is on Defendant to make the required showing under subsections (1), (2), and (3) before the trial court. Absent the required showing, the trial court is not statutorily obligated to order pre-trial DNA testing." State v. McLean,--- N.C.App. at ----, 753 S.E.2d at 239.
As an initial matter, it is unclear precisely what relief Putnam sought in his motions and on what grounds. At various points, Putnam appeared to be moving for a continuance, moving to force the SBI to produce any DNA testing reports, and moving for DNA testing under N.C. Gen.Stat. § 15A-267(c) -although Putnam never actually cited or referenced the statute. For example, the written motion filed with the trial court merely asked "that this matter be continued ... and that the District Attorney be instructed to obtain laboratory reports with regard to testing of the items listed ." But during the hearing, in response to questions from the trial court, Putnam's counsel stated that he sought "[t]o continue because [the tampon] has not been tested and to test it." Although Putnam's motions could have been more precise, we will construe them as seeking DNA testing under § 15A-267(c) and review the trial court's ruling under that statutory test.
The only ground Putnam provided to the trial court to justify DNA testing came during the hearing, when Putnam's counsel stated that "[a]s I recall, the discovery stated that he, the defendant, threw [the tampon].... And if so, the defendant did have it in his-allegedly had it in his possession. And if he allegedly had it in his possession, it raises a point that should have been submitted ." In other words, Putnam contended that the absenceof his DNA on the tampon might refute the victim's testimony that Putnam touched the tampon before he sexually assaulted her.
This argument is precluded by our case law. In McLean,this Court held that § 15A-267(c) does not apply to requests for DNA testing of an object in order to establish the lack of any DNA evidence on that object. --- N.C.App. at ----, 753 S.E.2d at 240-41. We explained that "N.C. Gen.Stat. § 15A-267(c) outlines a procedure for the DNA testing of 'biological material,' not evidence in general." Id."Here, the purpose of Defendant's request for DNA testing is to demonstrate the absence of his DNA on the shell casings at issue. By its plain language, N.C. Gen.Stat. § 15A-267(c) contemplates DNA testing for ascertained biological material-it is not intended to establish the absence of DNA evidence." Id.at ----, 753 S.E.2d at 240-41 (emphasis added). As a result, this Court held that "to the extent that Defendant's motion sought to establish a lack of DNA evidence on the shell casings, we hold that such a motion is not proper under N.C. Gen.Stat. § 15A-267(c)." Id.at ----, 753 S.E.2d at 241.
This case is factually indistinguishable from McLean.Here, Putnam sought DNA testing of the victim's tampon to prove the absence of his own DNA on that tampon. As Putnam explained to the trial court, the purpose of this testing was to show that his DNA was not on the tampon although the victim testified that Putnam had touched the tampon when he threw it into the woods. Thus, Putnam believed the absence of his DNA on that tampon (which sat, exposed to the elements, for several weeks before police discovered it) would show that the victim "fabricated at least this part of her narrative." This argument is the same one the defendant asserted in McLean,and this Court rejected it, holding that N.C. Gen.Stat. § 15A-267(c) "is not intended to establish the absence of DNA evidence." McLean,---- N.C.App. at ----, 753 S.E.2d at 240-41. Accordingly, we hold that the trial court did not err in denying Putnam's motions for continuance and motion for DNA testing under N.C. Gen.Stat. § 15A-267(c).[1]
II. Exclusion of Evidence Regarding Victim's Prior Allegations
Putnam next argues that the trial court erred in granting the State's motion in limineand prohibiting him from cross-examining S.R. and her mother about S.R.'s prior accusation that her stepfather watched her undress. Putnam contends that, because S.R.'s mother did nothing about that accusation and later kicked S.R. out of the house, the jury could infer that S.R.'s accusation was false. We hold that the trial court did not abuse its discretion by excluding this testimony.
"It has long been established that a defendant in a criminal case has a right to cross-examine adverse witnesses under the sixth amendment. The scope of cross-examination, however, lies within the sound discretion of the trial court and shall not be disturbed absent abuse of that discretion." State v. Anthony,89 N.C.App. 93, 95, 365 S.E.2d 195, 196 (1988).
Putnam first argues that his questions were not barred by the "rape shield" provision in Rule 412 of the Rules of Evidence. That provision excludes evidence of the victim's "sexual behavior," defined as "sexual activity ... other than the sexual act which is at issue in the indictment on trial." N.C. R. Evid. 412(a). Putnam is certainly correct that the challenged testimony-involving a juvenile's accusation that her stepfather watched her undress-is not evidence of "sexual activity" subject to Rule 412. See State v. McCarroll,336 N.C. 559, 563, 445 S.E .2d 18, 20 (1994) (holding that "a false accusation is not sexual activity" under Rule 412 ).
But although the State's motion in liminecited Rule 412 as a basis for excluding this testimony, the trial court did not rely on Rule 412 in granting the motion. Instead, the parties' argument during the in camerahearing and the voir direof the witness involved Rule 403 of the Rules of Evidence and the applicability of a line of cases involving similar testimony.
The first two in that line of cases are State v. Baronand State v. Durham.These cases hold that a victim's prior falseaccusations of sexual misconduct are admissible to impeach the victim's credibility. See State v. Baron,58 N.C.App. 150, 153, 292 S.E.2d 741, 743 (1982) ; State v. Durham,74 N.C.App. 159, 167, 327 S.E.2d 920, 926 (1985).
Several years after Baronand Durham,this Court decided State v. Anthony.There, we held that "[t]he common element in both Baronand Durhamwas the presence of some evidence tending to show that the previous accusations of sexual misconduct were false." Anthony,89 N.C.App. at 96-97, 365 S.E.2d at 197. In Anthony,by contrast, although the charges brought by the victim were later dropped, there was no direct evidence that the victim's allegations were false. Id.at 97, 365 S.E.2d at 197. This Court noted that "there are many reasons why the charges, if any, brought against prosecutrix's father and stepfather were dropped."Id.Because there was no direct evidence of falsity, this Court held there was "no abuse of discretion or constitutional error" in the trial court's decision to exclude the accusations under Rule 403. Id.
This case involves facts analogous to Anthony.Here, the trial court conducted a hearing outside the presence of the jury during which both parties had the opportunity to question S.R. about her accusation against her stepfather. S.R. testified as follows:
DEFENSE COUNSEL: And is it not true that you had previously made accusations against your stepfather ...
S.R.: Yes, sir.
DEFENSE COUNSEL: You have? All right. And as a result of that, you couldn't live with your mother ... because [your mother] was living with [your stepfather].
S.R.: Yes, sir.
DEFENSE COUNSEL: Is that right? Okay. And that accusation against [your stepfather] had something to do with him watching you dress?
S.R.: Yes, sir.
DEFENSE COUNSEL: That's just the basis I have about that.
THE COURT: Do you wish to be heard about that? PROSECUTOR: Yes, sir.
THE COURT: Okay.
PROSECUTOR: [S.R.], is what you said about [your stepfather] true?
S.R.: Yes, ma'am
PROSECUTOR: Have you ever said it was not true?
S.R.: No, ma'am.
This was the full extent of the voir diretestimony on this issue.
After hearing this testimony, the trial court ruled, consistent with Anthony,that it would exclude the evidence under Rule 403 given the lack of any direct evidence of falsity. As this Court held in Anthony,the decision to exclude this type of cross-examination "lies within the sound discretion of the trial court and shall not be disturbed absent abuse of that discretion." 89 N.C.App. at 95, 365 S.E.2d at 196. Because there was no direct evidence that S.R.'s previous allegation of sexual misconduct by her stepfather actually was false, the trial court was within its sound discretion in excluding that testimony on the ground that it was substantially more prejudicial than probative. Accordingly, we find no error in the trial court's exclusion of this evidence.
Conclusion
For the reasons discussed above, we hold that the trial court did not err in denying Putnam's motions for continuance and DNA testing or in excluding the challenged testimony.
NO ERROR.
Report per Rule 30(e).
Chief Judge MCGEE and Judge HUNTER, JR. concur.
Opinion
Appeal by defendant from judgments entered 24 July 2014 by Judge James W. Morgan in Cleveland County Superior Court. Heard in the Court of Appeals 6 April 2015.

Putnam also argues on appeal that the tampon should have been tested for the victim's DNA because the absence of her DNA on the tampon likewise would have undermined the credibility of her testimony. But Putnam did not raise this argument in the trial court and cannot raise it for the first time on appeal. State v. Haselden, 357 N.C. 1, 10, 577 S.E.2d 594, 600 (2003). In any event, this argument also seeks to establish the absence of DNA evidence. Notably, Putnam did not contend that someone else's DNA might be present on the tampon. Accordingly, even if preserved, this argument would be meritless under McLean.